# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

SAMMY R. MCKNIGHT, individually and on    )
behalf of all others similarly situated,            )
                                             )
      Plaintiffs,                   )        **Case No. 3:06-1019**
                                               )        **Judge Trauger**
v.                                         )
                                             )
ROBERT MICHAEL GATES,            )
Secretary, Department of Defense,       )
                                             )
      Defendant.                  )

## MEMORANDUM

This case comes before the court on a Motion to Dismiss filed by the defendant (Docket No. 26), to which the plaintiff has responded (Docket No. 30), and the plaintiff has replied (Docket No. 37). In addition, the plaintiff has filed a Motion to Certify Class (Docket No. 19-8). For the reasons cited herein, the defendant's Motion to Dismiss will be **GRANTED** and the plaintiff's Motion to Certify Class will be **DENIED**.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Sammy R. McKnight is a retired civil service employee of the United States Department of the Army, having served in a position in Korea until September 8, 2001.[1] Mr. McKnight retired as a federal annuitant, having met the service and age requirements for eligibility. Subsequently, in October 2003, Mr. McKnight applied for a new position with the Department of Defense as a GS-2001-11, or General Supply Specialist. On January 26, 2007,

---

[1]Unless otherwise indicated, the facts have been drawn from the plaintiffs' First Amended Complaint (Docket No. 19-7).

1

Mr. McKnight was offered the General Supply Specialist position, and the next day he accepted it. On February 9, 2004, Mr. McKnight received a phone call from Ms. Pae Son, a Human Resource Specialist with the Civilian Personnel Advisory Center ("CPAC") in Seoul, South Korea. Ms. Pae Son informed Mr. McKnight that the defendant's hiring decision had been suspended due to a Department of Defense memorandum that had imposed a fifty-day hiring freeze with regard to all federal annuitants.

The memorandum to which Ms. Pae Son referred had been issued on February 3, 2004 by the Department of Defense Civilian Personnel Management Services and had been signed by Charles A. Rogers. The memorandum was issued in furtherance of 5 U.S.C. § 9902, as enacted by § 1101 of the National Defense Authorization Act for Fiscal Year 2004, Pub. L. 108-136, 117 Stat. 1392, 1629 (November 30, 2003), which created new policies relating to the hiring of annuitants within the Department of Defense. The memorandum stated, in pertinent part: "The Department of Defense (DOD) is developing policy and procedures for the employment of annuitants . . . . Because of pay considerations inherent to annuitant appointments, all such hiring actions should be suspended until the DOD policy is implemented."

On February 20, 2004, Mr. McKnight received an e-mail message from Ms. Pae Son, attaching a copy of the Memorandum and an official letter from Mr. G.E. Zentner, the selecting official, officially withdrawing the job offer. A current Civil Service employee was subsequently hired for the General Supply Specialist position. The plaintiff's First Amended Complaint does not allege the age of the hired employee.

Mr. McKnight first contacted the Equal Employment Opportunity Commission ("EEOC") on March 10, 2004. (Docket No. 30 at p. 4) This informal complaint contains the

following type-written statement: "To file a complaint based on age wherein it is alleged that the suspension of annuitant appointments targeted and discriminates against a select group of people by their age." After the word "age" appears a handwritten notation stating, "specifically including myself." Additionally, the word "class," which had been typed in front of the word "complaint," was heavily crossed out. (Docket No. 30, Ex. 4)

On March 19, 2004, Mr. McKnight wrote a memorandum to his Equal Employment Office counselor concerning his informal complaint. The counselor's report indicates that McKnight's memorandum alleged ". . . the DOD memorandum was highly unfair, unjust and discriminatory against all annuitants, especially himself." (Docket No. 30 at p. 4) On April 4, 2006, Mr. McKnight filed his formal EEOC complaint, No. DCP-04-002. On February 15, 2006, the EEOC mailed Mr. McKnight a notice of his right to file a civil action in federal court based on Appeal No. 01A52877.

The plaintiff filed this action on May 15, 2006, in the Northern District of Georgia, alleging (1) violation of the Civil Rights Act, 42 U.S.C. §§ 2000(e) *et seq*., and (2) violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*., with respect to both the plaintiff and a class of others similarly situated, on both disparate impact and disparate treatment theories of recovery. (Docket No. 19-2) On July 25, 2006, the plaintiff filed a First Amended Complaint alleging identical causes of action. (Docket No. 19-7) Additionally, on October 23, 2006, the plaintiff filed a Motion for Class Certification. (Docket No. 19-8) On September 19, 2006, the parties entered a joint Stipulation of Voluntary Partial Dismissal, dismissing the Title VII claim (Docket No. 19-19) and, on September 21, 2006, the court entered the dismissal. On September 2, 2006, the defendant filed a Motion to Dismiss for lack of venue

3

(Docket No. 19-12), and on October 19, 2006, United States District Judge William S. Duffy of the Northern District of Georgia elected to transfer venue to this court. (Docket No. 19-26) Thereafter, on December 6, 2006, the defendant filed a Motion to Dismiss for failure to state a claim and for lack of subject matter jurisdiction. (Docket No. 26)

## ANALYSIS

### I. Exhaustion of Administrative Remedies

The defendant alleges that this court lacks subject matter jurisdiction over the plaintiff's class action claims because the plaintiff failed to raise those claims with the EEOC. The court finds that, because the plaintiff did fail to exhaust his administrative remedies with regard to his class action claims, or to otherwise file notice of those claims, those claims must be dismissed. However, because failure to exhaust administrative remedies is not a jurisdictional bar, but instead a condition precedent to action in district court, the exhaustion issue is more properly analyzed under Rule 12(b)(6) and, therefore, the court will convert the defendant's 12(b)(1) arguments into arguments under 12(b)(6).

### A. Proper Standard of Review

Under Federal Rule of Civil Procedure 12(b)(1), once the defendant challenges the court's subject matter jurisdiction, the plaintiff must meet the burden of proving jurisdiction. *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). A Rule 12(b)(1) motion may either challenge the complaint on its face or contest the factual basis of jurisdiction. *Id.* If the motion challenges the complaint on its face, the plaintiff's burden "is not onerous." *Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1248 (6th Cir. 1996). To defeat a facial challenge, the plaintiff need only demonstrate that the complaint alleges a "substantial" federal

4

claim, which is established by showing that prior decisions do not render the claim frivolous. *Id.* A court evaluating a facial attack must consider the allegations of fact in the complaint to be true. *Jones v. City of Lakeland*, 175 F.3d 410, 413 (6th Cir. 1999). Thus, "the plaintiff can survive the motion by showing any arguable basis in law for the claim made." *Musson Theatrical,* 89 F.3d at 1248.

Alternatively, if a Rule 12(b)(1) motion contests the facts underlying subject matter jurisdiction, the court "must weigh the evidence" in order to determine whether it has the power to hear the case. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). When facts are disputed, "[t]he district court has broad discretion to consider affidavits, documents outside the complaint, and to even conduct a limited evidentiary hearing if necessary." *Cooley v. United States*, 791 F. Supp. 1294, 1298 (E.D. Tenn.1992), *aff'd sub nom. Myers v. United States,* 17 F.3d 890 (6th Cir. 1994). The court may consider such factual evidence without converting the Rule 12(b)(1) motion into a motion for summary judgment. *Id.*

The defendant disputes subject matter jurisdiction on the basis of fact; specifically, the defendant alleges that the plaintiff did not properly exhaust his administrative remedies with regard to the "class action" claims. However, "the failure to exhaust administrative remedies is not a bar to jurisdiction, but is a condition precedent to [a] plaintiff's case." *Kubicki v. Brady*, 829 F. Supp. 906, 910 (E.D. Mich. 1993), *aff'd* 41 F.3d 1507 (6th Cir. 1994) (Table); *see also Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court.").

The Sixth Circuit has held that "time requirements in statutes designed to eliminate unlawful discrimination in employment are not jurisdictional," in part because those

5

requirements arise from agency regulations, and not from statutory provisions. *Boddy v. Dean*, 821 F.2d 346, 350 (6th Cir. 1987). Of course, "[e]ven though failure to exhaust administrative remedies is not a jurisdictional bar, it is still a condition precedent to an action" in federal court. *Kubicki*, 829 F. Supp. at 910 (citing *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1984) (per curiam)). Failure to exhaust administrative remedies, therefore, "should be treated 'like a statute of limitations that is subject to waiver, estoppel, and equitable tolling.'" *Id.* (quoting *Boddy*, 821 F.2d at 350).[2] Accordingly, the court will construe the defendant's arguments in favor of dismissing the plaintiff's class action claims under Rule 12(b)(6), for failure to satisfy the condition precedent of exhausting his administrative remedies.

### B.        Rule 12(b)(6) Standard

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will accept as true the facts as the plaintiff has pleaded them. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002); *Performance Contracting, Inc. v. Seaboard Surety Co.*, 163 F.3d 366, 369 (6th Cir. 1998). The Federal Rules of Civil Procedure require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Indeed it may appear on the face of the pleadings that recovery is very

---

[2]The plaintiff in this case has not submitted any allegations or arguments in favor of waiver, estoppel, or equitable tolling.

6

remote and unlikely but that is not the test." *Scheuer*, 416 U.S. at 236. Rather, challenges to the merits of a plaintiff's claim should be "dealt with through summary judgment under Rule 56." *Swierkiewicz*, 534 U.S. at 514.

This term, in *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007), the Supreme Court readdressed the pleading requirements under the Federal Rules. Specifically, the Court reconsidered the long-held dictum that "'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* at 1968 (quoting *Conley*, 355 U.S. at 45-46). The court rejected a literal reading of the "no set of facts" rule, under which "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id.* Instead, the court stressed that, although a complaint need not plead "detailed factual allegations," those allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65. Further, the Court observed that Federal Rule of Civil Procedure 8(a)(2) does require a "showing" that the plaintiff is entitled to relief and that this substantive threshold is not achieved by conclusory assertions. *Id.* at 1965 n. 3. Accordingly, the Court concluded that the "no set of facts" language, "after puzzling the profession for 50 years . . . has earned its retirement." *Id.* at 1969. "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.*

Although Federal Rule of Civil Procedure 8 establishes a "liberal system of notice pleading," *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001), "a plaintiff's

7

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombley*, 127 S.Ct. at 1964-65 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Accordingly, to survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965; *see also*, *Swierkiewicz,* 534 U.S. at 508, n. 1; *Neitzke v. Williams,* 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer,* 416 U.S. at 236 (a well-pleaded complaint may proceed, even if it appears "that a recovery is very remote and unlikely"). With this standard in mind, the court turns to an analysis of the exhaustion of remedies issue.

### C.    Plaintiff's Failure To Exhaust The Proposed Class Action Claims

The EEOC has promulgated regulations specifically addressing the administrative exhaustion of class complaints. Under those regulations:

> [a] class complaint is a written complaint of discrimination filed on behalf of a class by the agent of the class alleging that:
>
> (i) [t]he class is so numerous that a consolidated complaint of the members of the class is impractical;
>
> (ii) [t]here are questions of fact common to the class;
>
> (iii) [t]he claims of the agent of the class are typical of the claims of the class; [and]
>
> (iv) [t]he agent of the class, or, if represented, the representative, will fairly and adequately protect the interests of the class.

29 C.F.R. § 1614.204(a)(2). An applicant who wishes to file a class complaint "must seek counseling and be counseled" with regard to that complaint and, afterwards, "[a] complainant

may move for class certification at any reasonable point in the process when it becomes apparent that there are class implications to the claim raised in an individual complaint."  29 C.F.R. § 1614.204(b).  Further, "[a] class complaint must be signed by the agent or representative and must identify the policy or practice adversely affecting the class as well as the specific action or matter affecting the class agent."  29 C.F.R. § 1614.204(c)(1).  Finally, "[t]he complaint must be filed with the agency that allegedly discriminated not later than 15 days after the agent's receipt of the notice of right to file a class complaint."  29 C.F.R. § 1614.204(c)(2).

The defendant did not file a class complaint with the EEOC or inform his counselor that he desired to file a class complaint.  In fact, in the plaintiff's first written contact with his EEOC counselor, it appears that he crossed out the word "class" in front of the word "complaint," leading to the inexorable conclusion that he did not intend to file a class complaint. (Docket No. 30, Ex. 4) Although the plaintiff's formal EEOC complaint does allege "targeting and discriminating against a select group of people by their age, specifically including myself," that allegation cannot be said to sufficiently alert the reader to the plaintiff's desire to file a class complaint.  Rather, the statement is in accordance with the general requirement that a plaintiff alleging discrimination demonstrate that he or she is a member of a protected class.  The plaintiff's EEOC complaint is not labeled as a class complaint, and it does not include the specific information required by 29 C.F.R. § 1614.204(a)(2).  Nor is that information provided in any of the plaintiff's informal submissions.

The plaintiff attempts to sidestep these omissions by referring to 29 C.F.R. § 1614.105, which states that, "if the aggrieved person informs the [c]ounselor that he or she wishes to file a class complaint, the [c]ounselor shall explain the class complaint procedures and the

9

responsibilities of a class agent." However, the plaintiff never alleges that he informed his counselor that he wished to file a class complaint. In fact, the plaintiff's very first submission to his counselor—in which the term "class" was crossed through—likely informed his counselor that he did not want to file a class complaint.

Although the plaintiff maintains that his EEOC submissions should have made it "clear that his intentions were to file a class complaint" and that "[t]he language that he used in his informal complaint evidenced his desire to file a discrimination complaint on behalf of himself and others," a close reading of those submissions belies any such intentions or desires. Further, 29 C.F.R. § 1614.105 does not require the EEOC counselor to interpret the plaintiff's intentions, but only directs that the counselor "shall explain the class complaint procedures," provided that the applicant "informs the [c]ounselor that he or she wishes to file a class complaint." EEOC counselors are not oracles, and where the applicant has not directly informed the counselor, the counselor cannot be expected to divine the applicants' wishes. The plaintiff neither informed the counselor that he desired to file a class complaint nor took the steps to file a class complaint, and the submissions that the plaintiff did file with the EEOC, to the extent that they speak on the subject at all, indicate that he did not wish to file a class complaint at that time.

The plaintiff also attempts to marshal the "scope of the charge" rule to persuade the court that, although his EEOC complaint did not include the class action counts, those counts may be asserted because they "could be expected to grow" from the causes of action that were included in the complaint. However, the plaintiff has cited no case law applying the "scope of the charge" rule to convert a conventional lawsuit into a class action, and the court will decline to do so. Under the "scope of the charge" rule, "the EEOC's complaint is limited to the scope of the

10

EEOC investigation reasonably expected to grow out of the charge of discrimination." *Equal Employment Opportunity Commission v. McCall Printing Corp.*, 633 F.2d 1232, 1235 (6th Cir. 1980). This rule allows subsequent complaints to include causes of action about which the plaintiff was not aware at the time of the filing of the EEOC complaint and were discovered during the ensuing investigation. *Id*.

The court has found no Sixth Circuit precedent expanding a conventional lawsuit into a class action via the "scope of the charge" rule, and for good reason: the EEOC has promulgated specific guidelines for the filing and presentation of class complaints that, under such a reading of the "scope of the charge" rule, would be rendered meaningless. *C.f. Ivey v. Rice*, 759 F. Supp. 394, 400 (S.D. Ohio 1991), aff'd 961 F.2d 1577 (6th Cir. 1992) ("[I]f no sanction may be imposed for failure to comply with the administrative regulations, they would be rendered meaningless, thereby frustrating the goals of the administrative process.") If the only requirement for expanding a conventional law suit into a class action after the closure of the administrative process is that the class action "grows out of" the plaintiff's suit, then it would apply to every potential class action. This would be contrary to the purpose of the "scope of the charge rule." The "scope of the charge" rule serves as a vehicle to expand causes of action within a lawsuit, and not as a means to add parties to the lawsuit, via class action or any other means. *See Artis v. Greenspan*, 158 F.3d 1301, 1306-08 (D.C. Cir. 1998) (holding that plaintiffs had failed to exhaust administrative remedies to bring a class complaint where the EEOC complaint contained incomplete class allegations); *Kloos v. Carter-Day Co.*, 799 F.2d 397, 400 (8th Cir. 1986) ("Allowing class actions without administrative charges that fairly anticipate class claims would undermine the notice and conciliation purposes of the filing requirement.")

11

The inapplicability of the "scope of the charge" rule to the present case is well illustrated

by the operation of another doctrine:  the "single filing rule."  That rule "allows the

administrative charge of one plaintiff to satisfy the charge filing obligations of other plaintiffs"

in a class action suit under the ADEA.  *Howlett v. Holiday Inns., Inc.*, 49 F.3d 189, 194 (6th Cir.

1995); *see also Equal Employment Opportunity Comm'n v. Wilson Metal Casket Co.*, 24 F.3d

836, 840 (6th Cir. 1994) (applying the "single filing rule" in the Title VII context).  That is,

assuming that the plaintiff has alerted the EEOC to the fact that his claim has class-wide

implications, the "single filing rule" allows subsequent plaintiffs—who themselves have not

filed timely grievances—to "piggy-back" or join in the original case.  *Howlett*, 49 F.3d at 194

(citing *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1056 (2d Cir. 1990).  Notably, the "single filing

rule" cannot apply in situations, such as this one, where the original plaintiff's administrative

complaint does not alert the EEOC to the specific class implications of his claim.  *Id*.[3]

For instance, in *Marquis v. Tecumseh Products Co.*, 206 F.R.D. 132, 150-52 (E.D. Mich.

2002), the court addressed whether potential class plaintiffs in a Title VII case who had not met

the administrative filing deadlines could "piggy-back" onto earlier filed EEOC charges.  The

court reasoned that, "while such devices as 'piggybacking' and the 'single-filing rule' might

relieve individual class members of their obligation to file separate charges with the EEOC, a

---

[3]In *Williams v. Tennessee Valley Authority*, 552 F.2d 691, 693 (6th Cir. 1977), a racial
discrimination case under Title VII, the Sixth Circuit first addressed the issue of whether every
member of a class needed to exhaust an administrative class complaint in order to join in a
federal class action.  The court held that they did not.  *Id*. at 696-97. However, the court noted
that the plaintiff in *Williams* "had presented not only his individual claims but also the class
claims of discrimination at the administrative level."  *Id*. at 696.  Moreover, the *Williams*
decision was based in part on administrative defects that existed prior to the EEOC's
promulgation of regulations on administrative class actions in 1977.

class action nevertheless must be supported by at least one representative charge, timely brought by one of the named plaintiffs, which adequately identifies the collective, class-wide nature of the claimed discrimination." *Id*. at 150. Further, the court noted that, to "satisfy the precondition to the commencement of a Title VII class action, an EEOC charge must alert the employer and the EEOC to alleged class-wide discrimination, and must provide adequate notice of the scope of the proposed class, so that the parties may engage in meaningful conciliation efforts in advance of suit." *Id*. (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1102-05 (11th Cir. 1996)). Finding that the complaints in question did not meet this standard and that no equitable tolling principles applied, the court held that the potential class plaintiffs' failure to exhaust their administrative remedies precluded them from proceeding with a class action. *Id*. at 155.

If, in cases where additional class plaintiffs have affirmatively volunteered themselves, a class action nevertheless may not proceed unless the original EEOC charge adequately identified the class-wide nature of the charges, it can only follow that in cases such as this one—where the existence of additional class plaintiffs is entirely speculative—the standard can be no more lenient. As mentioned above, the plaintiff's communications with the EEOC—in which the word "class" situated in front of "complaint" has actually been crossed-out—and his formal EEOC complaint did not adequately identify the class nature of his claims. Accordingly, the court finds that the plaintiff did not exhaust his administrative remedies with regard to the "class action" counts.

13

### D. The Exhaustion Requirement As Applied to the ADEA

There remains, however, an important issue: whether the ADEA required the plaintiff to exhaust his administrative remedies at all. Unlike Title VII, the ADEA does not explicitly require plaintiffs to avail themselves of the administrative process before filing suit. Instead, as the Supreme Court has concluded, 29 U.S.C. §633a provides:

> [There are] two alternative routes for pursing a claim of age discrimination. An individual may invoke the EEOC's administrative process and then file a civil action in federal district court if he is not satisfied with his administrative remedies. *See* 29 U.S.C. §633a(b) and (c). A federal employee complaining of age discrimination, however, does not have to seek relief from his employing agency or the EEOC at all. He can decide to present the merits of his claim to a federal court in the first instance. *See* 29 U.S.C. §633a(d).

*Stevens v. Department of the Treasury*, 500 U.S. 1, 3 (1991); *see also Langford v. U.S. Army Corps. of Engineers*, 839 F.2d 1192, 1193-94 (6th Cir. 1988).

Some circuits adhere to the rule that these two potential avenues are mutually exclusive; that is, once a plaintiff invokes the EEOC's administrative process, he or she is barred from filing a federal claim until that process has been exhausted. *See, e.g., Castro v. United States*, 775 F.2d 399, 404 (1st Cir. 1985) (reasoning that, to allow an individual to initiate a civil action after administrative remedies have been initiated, but before they have been completed, would be contrary to the central objectives of conciliation); *McGinty v. U.S. Dept. of Army*, 900 F.2d 1114, 1117 (7th Cir. 1990) ("While the statute and regulations do not explicitly answer this question, we agree with the circuits that have found administrative remedies, once initiated, must be exhausted before a suite may be filed."); *Purtill v. Harris*, 658 F. 2d 134, 138 (3d Cir. 1981), *cert. denied*, 462 U.S. 1131 (1983); *Rivera v. United States Postal Serv.*, 830 F.2d 1037 (9th Cir.

1987), *cert. denied*, 486 U.S. 1009 (1988); *Bornholdt v. Brady*, 869 F.2d 57, 63 (2d Cir. 1989).

However, in *Langford*, the Sixth Circuit took the opposite position, holding that filing an administrative claim did not foreclose the option of filing directly in district court. *Langford*, 839 F.2d at 1193-94. The *Langford* court reasoned that "the ADEA may be construed to permit the filing of a civil action at any time when an employee or applicant has filed an age discrimination complaint with the EEOC." *Id*. The *Langford* holding was put into question in *Ivey v. Rice*, 759 F. Supp. at 400, a case arising in the Southern District of Ohio, which was ultimately affirmed by the Sixth Circuit. In *Ivey*, the court noted that the Fifth Circuit opinion on which *Langford* had relied in part, *Paterson v. Weinberger*, 644 F.2d 521, 523-24 (5th Cir. 1981), had itself been called into question by a subsequent Fifth Circuit opinion, *White v. Frank*, 895 F.2d 243, 244 (5th Cir. 1990). The *Ivey* court reasoned that "The *Langford* holding may now be subject to question, since under the current version of 29 C.F.R. § 1613.513, the filing of a civil action terminates the administrative proceedings, whereas when *Langford* was decided, the administrative proceedings continued even after the filing of a civil action." 759 F. Supp. at 399. Further, the court distinguished *Langford* in the following manner:

> Since plaintiff did not file suit until after the conclusion of administrative proceedings, this case is not directly analogous to the situation in *Langford,* where the plaintiff filed suit prior to the rendering of a final agency decision. The court in *Langford* was not required to decide what effect the failure to comply with administrative time limits would have on a subsequent civil action. One interpretation of *Langford* would be that noncompliance with administrative procedures would not bar a subsequent civil action, in light of the language in *Langford* that exhaustion of administrative remedies is not required. However, if no sanction may be imposed for failure to comply with the administrative regulations, they would be rendered meaningless, thereby frustrating the goals of the administrative process. The unreasonableness of such a result indicates that the *Langford* holding should be confined to the circumstances in that case.

15

*Id.* at 400.

The case at hand is more closely analogous to *Ivey*, where the plaintiff filed suit after the conclusion of administrative proceedings but failed to comply with the time limits governing those proceedings, than to *Langford*, where the plaintiff filed suit prior to the completion of the agency proceedings. In addition, this court finds the reasoning in *Ivey* persuasive. Accordingly, the court finds that the plaintiff's failure to exhaust his administrative remedies with regard to his class action claims precludes him from bringing those claims at this time.

Moreover, even if the plaintiff were to be permitted under *Langford* to change course and directly file his class action claims in district court, the problem remains that the plaintiff did not comply with the requirements of 29 U.S.C. §633a(d), which govern that option. Section 633a(d) provides:

> When the individual has not filed a complaint concerning age discrimination with the Commission, no civil action may be commenced by any individual under this section until the individual has given the commission not less than thirty days' notice of an intent to file such action. Such notice shall be filed within one hundred and eighty days after the alleged unlawful practice occurred. Upon receiving a notice of intent to sue, the Commission shall promptly notify all persons named therein as prospective defendants in the action and take any appropriate action to assure the elimination of any unlawful practice.

29 U.S.C. §633a(d). The Sixth Circuit has interpreted this language to require that, in order to file an ADEA claim directly in district court, bypassing the administrative process, the plaintiff must (1) file notice with the EEOC of its intent to file the action within 180 days of the alleged discrimination, and (2) file the civil action no less than thirty days after such notice is given. *See Ivey*, 759 F. Supp. at 402-3; *Anderson v. Tennessee Valley Authority*, 991 F.2d 794 (6th Cir. 1993) (Table) (per curiam); *Milsap v. Mineta*, No. 04-2850 B, 2005 WL 2291227 at *3-4 (W.D.

16

Tenn. 2005) ("What the [p]laintiffs have not addressed, and what is fatal to their position in this [c]ourt's view, is their failure to satisfy the requirements for filing an action in federal court pursuant to the direct route, which they must do.")

As discussed above, the plaintiff did not give the EEOC notice of his intent to file a class action within 180 days of the alleged discrimination, or any time thereafter. Therefore, even if the *Langford* decision could be applied in such a way as to excuse the plaintiff's failure to exhaust his administrative remedies with regard to the class claims, those claims would still be barred by the plaintiff's failure to satisfy the prerequisites for directly filing in district court. Accordingly, the plaintiff's class action claims will be dismissed pursuant to Rule 12(b)(6), and the plaintiff's motion to certify class will be denied.

## IV. Plaintiff's ADEA Claim

The defendant has moved to dismiss the plaintiff's personal ADEA cause of action for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In accordance with the Rule 12(b)(6) standard of review set forth above, the court will grant the defendant's motion.

### A. Disparate Treatment Theory

To properly state a *prima facie* case for age discrimination under a disparate treatment theory of recovery, a plaintiff's complaint must allege "that the employer acted with the intention of discriminating on the basis of age." *Abbot v. Federal Forge, Inc.*, 912 F.2d 867, 871 (6th Cir. 1990); *see also Hazen Paper Co v. Biggins*, 507 U.S. 604, 610 ("In a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually

17

motivated the employer's decision.").  This may be accomplished in one of two ways:  (1) by alleging direct evidence of discrimination, or (2) by alleging circumstantial or indirect evidence from which discrimination can be inferred.  Although the plaintiff's First Amended Complaint specifically alleges only direct evidence of discrimination, the plaintiff's brief in opposition to the defendant's motion to dismiss presented arguments under both the direct and indirect theories of recovery.  (Docket No. 30 at p. 10-13)  Therefore, the court will examine the complaint for sufficient allegations supporting either theory.

### 1.    Direct Evidence of Discrimination

Direct evidence of age discrimination "is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Laderach v. U-Haul of Northwestern Ohio*, 207 F.3d 825, 829 (6th Cir. 2000); *see also Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994).

The plaintiff alleges that, as demonstrated in the defendant's February 3, 2004 memorandum, the defendant violated the ADEA by basing its hiring decisions on the annuitant status of the defendant.  Certainly, the memorandum does indicate that the plaintiff's job offer was withdrawn due to his annuitant status.  However, facing a similar fact pattern, the Supreme Court has held that an adverse employment action based on an employee's pension status or seniority does not violate the ADEA.  *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993); *see also Lyon v. Ohio Educ. Ass'n and Professional Staff Union*, 53 F.3d 135, 139-41 (6th Cir. 1995) (holding that an early retirement provision calculating pension benefits, in part, from years to retirement did not violate the ADEA); *Allen v. Diebold*, 33 F.3d 674, 676 (6th Cir. 1994) ("[T]he ADEA prohibits only actions actually motivated by age and does not constrain an

18

employer who acts on the basis of other factors—pension status, seniority, wage rate—that are empirically correlated with age."); *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125 (7th Cir. 1994) (holding that firing an older worker to eliminate a high salary did not violate the ADEA); *Williams v. General Motors Corp.*, 656 F.2d 120, 130 n. 17 (5th Cir. 1981) ("[S]eniority and age discrimination are unrelated. . . .").

In *Hazen*, the defendant was fired from his long-held position with the defendant in order to prevent his pension benefits from vesting. *Id*. at 607. In facing what was, at the time, a split among the federal circuit courts of appeal as to whether hiring decisions based on factors, such as pension status or seniority, that correlate with age, the Supreme Court held that "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." *Id*. at 609. The court reasoned that disparate treatment "liability depends on whether the protected trait . . . actually motivated the employer's decision" and that the purpose behind the ADEA was to prevent older workers from "being deprived of employment on the basis of inaccurate and stigmatizing stereotypes." That is, "the ADEA commands that 'employers are to evaluate [older] employees . . . on their merits and not their age.,'" *id*. at 611 (citing *Western Air Lines, Inc. v. Criswell*, 472 U.S. 400, 422 (1985)), and, therefore requires only that "[t]he employer cannot rely on age as a proxy for an employee's remaining characteristics, such as productivity, but must instead focus on those factors directly." *Id*.

Accordingly, the Court in *Hazen* held that:

When the employer's decision *is* wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is. . . .

19

On average, an older employee has had more years in the work force than a younger employee, and thus may well have accumulated more years of service with a particular employer. Yet an employee's age is analytically distinct from his years of service. An employee who is younger than 40, and therefore outside the class of older workers as defined by the ADEA . . . may have worked for a particular employer his entire career, while an older worker may have been newly hired. Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily "age based."

*Id*. (emphasis in original). The holding in *Hazen* applies directly to the case at hand. Annuitant status is analytically distinct from age[4], and the February 3, 2004 memorandum demonstrates only that the defendant was concerned about its ability to pay the pensions of newly hired annuitants. The plaintiff has not alleged that the defendant relied on age as a proxy for characteristics such as productivity but instead maintains the defendant's hiring decision based on annuitant status, on its face, violates the ADEA. In light of *Hazen* and the myriad cases decided in its wake, there is simply no legal basis for the plaintiff's contention.

*Hazen* does leave the door open for actions alleging that an employer has engaged in age discrimination by "target[ing] employees with a particular pension status on the assumption that

---

[4]As the defendant has noted, a federal employee may reach annuitant status through several different means, none of which corresponds perfectly to age. Under 5 U.S.C. § 8410—which applies to all types of annuitants—unless otherwise provided in the Federal Employees' Retirement System, "an employee or Member must complete at least 5 years of civilian service creditable under section 8411 in order to be eligible for an annuity." Under 5 U.S.C. § 8412, an employee may become an annuitant, upon immediate retirement, after reaching a minimum age, *and* after completing a minimum number of years of service (the minimum age decreases as the minimum years of service increases). 5 U.S.C. § 8414 provides for a similar sliding scale for employees who elect early retirement. In addition, there are at least two ways in which a person may become an annuitant that are entirely independent of age. Under 5 U.S.C. § 8441 *et seq.*, widowed spouses may become annuitants without reaching any specific age, and, under 5 U.S.C. § 8451(a)(1)(A), disabled employees may become annuitants provided that they have completed at least 18 months of creditable civilian service.

20

these employees are likely to be older." *Id*. at 612-613. That is, an employer may violate the ADEA by using pension status as a pretext for hiring decisions that are actually motivated by the age of the employees in question. However, the Supreme Court also warned that "inferring age-motivation from the implausibility of the employer's explanation may be problematic in cases where other unsavory motives, such as pension interference, were present." *Id*. at 613. In any event, the "pension status as pretext" route cannot aid the plaintiff in this case because Mr. McKnight's First Amended Complaint does not allege that the defendant used annuitant status as a pretext for direct age discrimination. Instead, the complaint asserts that the hiring freeze, based on annuitant status, was discriminatory on its face, and that assertion cannot support a cause of action under the ADEA.

### 2. Circumstantial Evidence of Discrimination

To properly state a claim of age discrimination by circumstantial evidence, a plaintiff must provide the grounds for a *prima facie* case, under the familiar *McDonnel Douglas* burden shifting structure. That is, the plaintiff must allege: (1) that the plaintiff is a member of the protected class, being between the age of forty and seventy; (2) that the plaintiff was qualified for the position; (3) that the plaintiff was subjected to an adverse employment action; and (4) that the plaintiff was replaced by a younger individual. *See Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1126 (6th Cir. 1998); *O'Conner v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996).

The plaintiff has properly alleged that he is within the protected class, that he was qualified for the position (evidenced by the fact that he was actually offered employment just prior to the hiring freeze), and that he was subjected to an adverse employment action when his

offer was rescinded.  However, glaringly, the plaintiff's First Amended Complaint does not allege that he was replaced by a younger individual.  Instead, the First Amended Complaint states, "A current Civil Service employee was subsequently hired for the General Supply Specialist position."  (Docket No. 19-7 at ¶ 17).  The plaintiff's complaint goes no further to identify this employee, failing to allege that the employee is substantially (or insubstantially) younger than the plaintiff, or even that the employee is not, as well as the plaintiff, a federal annuitant.  Accordingly the plaintiff has failed to state a disparate treatment ADEA claim by means of circumstantial evidence.

Moreover, the court makes note of the plaintiff's statements in the First Amended Complaint that the defendant rescinded his job offer "due to the issuance of the February 3, 2004 [m]emorandum" (Docket No. 19-7 at ¶ 52) and that the memorandum "was an attempt by [the defendant] to temporarily limit the number of annuitant appointments" (*id*. at ¶ 19).  Typically, if the plaintiff has made out a *prima facie* case in an ADEA discrimination suit, "the burden shifts to the defendant to 'rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.'" *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1082 (6th Cir. 1994) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  Due to the fact that the plaintiff alleges that the defendant's hiring decision was based on its desire to limit the number of annuitants—which is a category that is analytically distinct from age, as set forth above—that burden is, already at this stage, presumptively met.  That is, based purely on the face of the complaint, the defendant could now show a legitimate, non-discriminatory reason for the hiring freeze—namely, the desire to temporarily limit the number of annuitant appointments.

22

Once the defendant has made this showing, the plaintiff can prevail only by rebutting the defendant's legitimate, non-discriminatory reason as pretextual. *Manzer*, 29 F.3d 1078 at 1083. In order to show pretext, the Sixth Circuit requires the plaintiff to establish, "by a preponderance of the evidence '(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge.'" *Hudson v. Insteel Industries Inc.*, 5 Fed. Appx. 378, 383-84 (6th Cir. 2001) (citing *Manzer*, 29 F.3d at 1084). Because the plaintiff's First Amended Complaint alleges that the hiring freeze was motivated by the defendant's desire to limit the number of annuitants, the complaint itself contradicts any argument that this desire (1) had no basis in fact, (2) did not actually motivate the hiring freeze, or (3) was insufficient to motivate the hiring freeze. *C.f. New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'") (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). Accordingly, on the face of the complaint, the plaintiff cannot show pretext.

## B. Disparate Impact Theory

The Supreme Court has held that the ADEA authorizes disparate impact claims; however, "[t]wo textual differences between the ADEA and Title VII make it clear that even though both statutes authorize recovery on a disparate-impact theory, the scope of disparate-impact liability under ADEA is narrower than under Title VII." *Smith v. City of Jackson*, 544 U.S. 228, 240 (2005). Due to specific language in the ADEA, a disparate impact claim cannot succeed where the defendant's action was based on a reasonable factor other than age. *Id.* at 240-42. That is,

23

"certain employment criteria that are routinely used may be reasonable despite their adverse impact on older workers as a group." *Id*. at 241. Further, "it is not enough to simply allege that there is a disparate impact on workers, or to point to a generalized policy that leads to such an impact." *Id*. "Rather, the employee is 'responsible for isolating and identifying the *specific* employment practices that are allegedly responsible for any observed statistical disparities.'" *Id*. (quoting *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 656 (1989) (quoting *Watson v. Forth Worth Bank and Trust*, 487 U.S. 977, 994 (1988))).

More pertinent to the case at hand, a disparate impact claim must be based on a negative impact *to a protected group*. *See Abbot v. Federal Forge, Inc.*, 912 F.2d 867, 872 (6th Cir. 1990) ("Under a theory of disparate impact, the plaintiff may establish a prima facie case of discrimination by showing the existence of an employment practice which, although neutral on its face . . . disproportionately affect[s] persons in a legally protected group.") (citing *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971)).

The plaintiff's disparate impact allegations refer to "a disproportionately adverse impact on Plaintiff, a member of a protected group, namely, annuitants." (Docket No. 19-7 at ¶ 56). As discussed above, annuitants are not a protected group, because annuitant status does not correspond perfectly to age. Some employees reach annuitant status via a combination of age and employment history, and others reach annuitant status without meeting any age component, through the death of a spouse, or through disability. Certainly, if an employer may discriminate purposefully on the basis of pension status without violating the ADEA—which, as discussed above, it can—then an employer may take actions with some other purpose that adversely impact workers with vested pensions or annuities. Therefore, the plaintiff has failed to allege that the

employment practice in question negatively impacted a protected group and, on that basis, has not adequately stated an ADEA claim under a disparate impact theory.

Because the plaintiff's First Amended Complaint has failed to allege adequate grounds for either the disparate treatment or disparate impact theories of recovery, the remaining counts of the complaint must be dismissed.

## CONCLUSION

For the reasons stated herein, the defendant's Motion to Dismiss (Docket No. 26) will be **GRANTED**, and the plaintiff's Motion for Class Certification (Docket No. 19, Ex. 8) will be **DENIED**.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge

25